1998 OK 75

**Ralph WYNN, Appellant,**

v.

**AVEMCO INSURANCE COMPANY, a
Maryland corporation, Appellee.**

No. 89403.

Supreme Court of Oklahoma.

July 14, 1998.

Everett R. Bennett, Frasier, Frasier & Hickman, Tulsa, for Appellant.

Harlan Pinkerton, Stewart & Elder, Tulsa, for Appellee.

HODGES, Justice.

¶1   The issue before this Court is whether the trial court properly granted summary judgment in favor of the defendant insurance company.  We find that summary judgment was improper because a genuine issue of material fact exists.

## I.  FACTS

¶2   Ralph Wynn, owner of a 1972 Piper Warrior, alleges that he requested "full coverage" when he first applied for insurance with Avemco Insurance Company (Avemco).  Wynn submitted a renewal application of the policy for a period from July 28, 1993 until July 28, 1994.  The application seeks coverage for liability for bodily injury and property damage.  However, the renewal application and the subsequent policy clearly stated that the coverage excluded "in-flight" damage to the aircraft.  The policy defined "in flight" as "the time starting when your insured aircraft moves forward for takeoff and continues until it has landed.  It has landed when it has safely stopped or left the runway under control."  The policy also stated that it applied "when your insured aircraft is in flight, only while being operated by" a pilot meeting certain listed requirements.  The policy covered the dates from July 28, 1993 through July 28, 1994.

¶3   On August 28, 1993, Wynn flew from Skiatook Municipal Airport to Airman Acres about seven minutes away.  The purpose of the trip was for Wynn to give demonstration rides at Airman Acres.  During the demonstration rides, Wynn intended to climb to about 2,000 feet.  About one mile into the climb of the first demonstration ride, the aircraft lost power, stopped climbing, and became unresponsive.

¶4   At the time the aircraft lost power, the throttle and fuel mixture were "wide open".  When Wynn did not regain power by adjusting the fuel mixture, he decided to land the aircraft in a hay meadow.  After touching the ground, the aircraft rolled to a stop.  During the time when the aircraft was coming to a stop, it hit a gopher hole causing it to "nose down" and collapsing the nose gear.  Wynn did not smell any unusual odors during the landing.

¶5   Three or four minutes after the aircraft came to a stop, Wynn and the three passengers safely exited.  While Wynn was calming the passengers, someone noticed smoke coming from the front side of the aircraft.  A fire truck arrived on the scene but left because it was not capable of extinguishing the fire.  While waiting for a second fire truck, the aircraft burned.  Wynn's expert witness stated in his deposition that the aircraft was parked twelve to fifteen minutes before it burst into flames.

¶6   Wynn sought to recover $25,000 from Avemco for the loss of his aircraft.  Avemco

denied the coverage based on the "in-flight" exclusion. Wynn filed this suit alleging breach of the insurance contract and bad faith by Avemco. Avemco filed a motion for summary judgment. The trial court granted the motion and entered judgment in Avemco's favor. Wynn appealed. The Court of Civil Appeals affirmed the trial court's judgment. This Court granted certiorari.

## II. SUMMARY JUDGMENT

¶ 7 Summary judgment is proper only when there is no genuine issue of material fact. *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 13, 812 P.2d 372. The burden is on the moving party to establish, through evidentiary material attached to the motion for summary judgment, that no genuine issue as to any material fact exists. Okla. Stat. tit. 12, ch.2., app. 1, rule 13(a) (1991). Thereafter, the opposing party must submit a statement of material facts which the party alleges are controverted and which are supported by evidentiary materials. *Id.* at rule 13(b).

## III. ISSUES

¶ 8 The petition for certiorari presents three questions for this Court's review. First, whether the policy should be reformed to eliminate the "in-flight" damage exclusion. Second, whether the policy was ambiguous and should be construed to include coverage for "in-flight" damage to the aircraft. Third, whether the policy, as a matter of law, excluded coverage of the damage to the aircraft from the fire.

## IV. REFORMATION OR ESTOPPEL

¶ 9 Wynn's position is that the policy should be reformed to provide "full coverage" including "in-flight" damage to the aircraft. Wynn alleges that he requested full coverage, and Avemco never told him that he did not have full coverage. An insurance company may be bound by statements of its agents with apparent or ostensible authority to bind the insurance company. *Gentry v. American Motorist Ins. Co.*, 1994 OK 4, ¶ 12, 867 P.2d 468, 471; *Atlas Life Ins. Co. v. Eastman*, 1957 OK 245, 320 P.2d 397, 403; *see* Okla. Stat. tit. 36, § 1423 (1991). Based

on a theory of constructive fraud, an insurance contract may be reformed to reflect the agreement between the agent and the insured. *Gentry*, 1994 OK 4, ¶ 9, 867 P. at 471. Even though the renewal of an insurance policy is a new contract, *Gov't Employees Ins. Co. v. U.S.*, 400 F.2d 172, 175–76 (10th Cir.1968); 13A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 7648 (1976), "it is presumed, unless a contrary intention appears, that the parties intended" that the renewal policy cover the same terms, conditions, and exceptions as the original policy. *Gov't Employees Ins. Co.*, 400 F.2d at 176; Appleman, *supra*, § 7648; 91 A.L.R. 546 (1963). Thus, it is the duty of the insurance company to call attention to any changes in the policy.

¶ 10 The facts of the present case are similar to the facts in *Gov't Employees Ins. Co. v. United States*, 400 F.2d at 172. In *Gov't Employees Ins. Co.*, the insurer sent the insured a cover letter with a renewal policy containing an additional exclusion in clear and conspicuous language and advising the insured to carefully read the policy. The Tenth Circuit Court of Appeals held that the insurer had sufficiently called the insured's attention to the change in coverage. Thus, the exclusion was incorporated into the renewed policy.

¶ 11 Another factually similar case is *Mundy v. Lumberman's Mut. Cas. Co.*, 783 F.2d 21 (1st Cir.1986). In *Mundy*, the renewal policy contained a reduction in coverage "written in readable English in good-sized print." The policy also admonished the insured to carefully read the policy and notify the company of any questions. The court held that the notice of changes in coverage was sufficient to alert the insured to the reduction in coverage and, thus, the limitations were incorporated into the renewed policy.

¶ 12 In the present case, Wynn was sent a notice of the expiration of the old policy and renewal application. The application for renewal instructed Wynn to check the coverage for accuracy. On the front page, the renewal application conspicuously showed that the policy did not cover "in-flight" damage to the aircraft. Wynn com-

pleted the application and returned it to Avemco without commenting on the "in-flight" exclusion.

¶ 13 Standing alone, an instruction to check for accuracy may be insufficient to call attention to an exclusion. However, when coupled with the fact that the "in-flight" exclusion is clearly and conspicuously stated on the front page of the renewal application and the policy, there can be no misconception that the policy excludes "in-flight" damage to the aircraft even if covered under the original policy. Wynn answered the questions on the application, signed it, and returned it to Avemco. While an insured is not required to search the fine print for changes in the terms of an insurance policy, it is not inequitable in this case to require Wynn to be aware of the "in-flight" exclusion when it was clearly stated on the front page of the renewal application and on the front page of the policy. *See Gov't Employees Ins. Co.*, 400 F.2d at 176; *Mundy*, 783 F.2d at 22.

¶ 14 Even if the agent represented to Wynn that the policy was for full coverage, the renewal application and the policy should have put Wynn on notice of the "in-flight" exclusion. Thus, there is no genuine issue of material fact that the policy in effect at the time of the accident did not cover "in-flight" damage to the aircraft.

## IV. AMBIGUITY IN THE CONTRACT

¶ 15 Wynn argues that the policy was ambiguous and should be construed to include "in-flight" damage to the aircraft. In a table on the front page, the policy stated the extent of liability coverage, stated the extent of coverage for damage to the aircraft together with the "in-flight" exclusion, and stated that medical liability coverage for family members was not included. Under the table, the policy stated: "This policy applies when your insured aircraft is in flight, only while being operated by one of the following pilots who holds a currently effective Pilot Certificate (unless a pre-solo student pilot) issued by the FFA". The statement then listed Ralph H. Wynn and made provisions for other pilots under which the policy would apply during their operation of the aircraft.

¶ 16 An insurance policy will be liberally construed so as to give a reasonable effect to all of its provisions. *Dobson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 11, 812 P.2d 372, 376. In *Wiley v. Travelers Ins. Co.*, 1974 OK 147, ¶ 16, 534 P.2d 1293, 1295–96, this Court stated:

> Parties to [an] insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by terms of [the] contract[,] and courts will not undertake to rewrite terms thereof. The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose. . . . A policy of insurance is a contract and should be construed as every other contract, that is, where not ambiguous, according to its terms. An insurance company may limit the risk for which it is responsible.

¶ 17 It is a court's duty to determine, as a matter of law, whether a contract is ambiguous. *Dobson*, 1991 OK 24, ¶ 12, 812 P.2d at 376. A court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision. *Id.* The rule that policies are to be construed against the insurer has no application where the provisions are susceptible of only one reasonable construction. 1991 Ok 24, ¶ 13, 812 P.2d at 377.

¶ 18 Generally the insurance carrier's obligations and the insured's rights are determined by the general declaration of insurance coverage as limited by its provisions. *Id.* The exclusions are read separately and operate independently against the general declaration. *Id.* Each exclusion operates to eliminate coverage by identifying events not covered by the policy. *Id.*

¶ 19 Applying these rules of law, the language of the policy clearly was clear that "in-flight" damage to the aircraft was excluded and that the approved pilot exclusionary provision applied to liability coverage and to damage to the aircraft other than "in-flight" only. There is no ambiguity created by either the "in-flight" aircraft damage exclusion or the "approved pilot" provision

standing alone. The "in-flight" exclusion removes from coverage any damage to the aircraft while "in-flight" as defined in the policy. The "approved pilot" provision further removes coverage for liability or damage to the aircraft while it is being operated by a person other than an approved pilot as enumerated in the policy. The "approved pilot" provision cannot be read to have added to the coverage as provided in the general declarations but only to limit the coverage. For this Court to construe the "approved pilot" exclusion as providing coverage for "in-flight" damage to the aircraft would require an impermissible rewriting of the policy. *See* 1991 OK 24, ¶ 17, 812 P.2d at 378. The policy clearly excludes from coverage "in-flight" damage to the aircraft.

## V. COVERAGE OF THE DAMAGES

¶ 20 Even though the policy clearly excludes "in-flight" damage to the aircraft, there is genuine issue as to the whether the damage was caused "in-flight" as defined by the policy. The policy defines "in flight" as follows:

"In flight" means the time starting when your insured aircraft moves forward for takeoff and continues until it has landed. It has landed when it has safely stopped or left the runway under control.

¶ 21 In a motion for summary judgment, the moving party initially must show that there is no genuine issue of material fact. Okla. Stat. tit. 2, ch. 2, app. 1, rule 13(a) (1991); *Bowers v. Wimberly*, 1997 OK 24, ¶ 14, 933 P.2d 312, 315. Only after the moving party submits evidentiary materials establishing an entitlement to summary judgment is the non-moving party required to submit evidentiary materials controverting the moving party's statement of undisputed material facts. Okla. Stat. tit. 2, ch. 2, app.1, rule 13 (1991). In the present case, Avemco has not met its burden of establishing that the material facts are undisputed.

¶ 22 The policy excludes from coverage damage to the aircraft from the time that it "moves forward for takeoff" until it has "safely stopped or left the runway under control." Avemco failed to submit any evidentiary materials regarding the cause of the

fire or the time of the start of the fire. Further Avemco, did not present any evidentiary materials showing that the aircraft had not safely stopped before the damage from the fire occurred. In contrast, Wynn presented evidentiary materials that there was no evidence of a fire at the time the aircraft lost power. Wynn's evidentiary materials submit that the aircraft had landed safely before the fire started. Wynn, in his deposition, stated that at the time of the fire, the aircraft had safely landed, he and his passengers had exited, and several minutes had lapsed before the fire started. Wynn's expert witness, in his deposition, testified that twelve to fifteen minutes lapsed between the time the aircraft was parked and the time that it burst into flames. Wynn submitted the deposition testimony of his expert witness that the aircraft was not "in flight" when the damage occurred.

¶ 23 Avemco relies on several cases which he argues involve the same facts and issues as the present case. Those cases are *Bressee v. Automobile Ins. Co.*, 1932 U.S. Avia. R. 53 (N.D.N.Y.1932); *Smith v. Avemco Ins. Co.*, 157 Ga.App. 531, 278 S.E.2d 112 (1981); and *James v. Federal Ins. Co.*, 5 N.J. 21, 73 A.2d 720 (1950). These cases are distinguishable because the definition of "in flight" is not the same as in the present case. Thus, we do not find them persuasive.

¶ 24 Summary judgment is a procedure to eliminate a needless trial. However, it is not to be used to "defeat [a] litigant's right to have [a] jury resolve factual issue[s] bearing significantly on [the] outcome of [a] case." *Martin v. Chapel, Wilkinson, Riggs and Abney*, 1981 OK 134, ¶ 6, 637 P.2d 81. In this case, the evidentiary materials are insufficient to establish that either party is entitled to judgment as a matter of law. Thus, summary judgment was improper.

## VI. CONCLUSION

¶ 25 There is no genuine issue of material fact as to whether the policy should be reformed to include "full coverage". The undisputed facts show that it should not. Further, there is no genuine issue of material fact as to whether "in-flight" damage to the

aircraft was excluded from coverage. The undisputed facts show that it was. However, there remains in dispute the material fact of whether the aircraft suffered "in-flight" damage as defined by the policy. Because a genuine issue of material fact remains, summary judgment is improper.

¶ 26 The opinion of the Court of Civil Appeals is vacated, the trial court's summary judgment to the defendant is reversed, and the cause is remanded for further proceedings.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF TRIAL COURT IS REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.

¶ 27 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER and WATT, JJ., concur.

¶ 28 ALMA WILSON, J., concurs in part; dissents in part.

¶ 29 SIMMS and HARGRAVE, JJ., dissent.

¶ 30 OPALA, J., not participating.